## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 23 2017, 7:32 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Raphael D. Driver
Michigan City, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

Raphael D. Driver,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

August 23, 2017

Court of Appeals Case No.
71A03-1605-PC-1018

Appeal from the
St. Joseph Superior Court

The Honorable
Steven L. Hostetler, Special Judge

Trial Court Cause No.
71D03-0104-CF-146

**Kirsch, Judge.**

[1] Following the revocation of his parole, Raphael D. Driver ("Driver") filed, *pro se*, several motions, including a Motion for Certificate of Discharge. Treating

his motions as seeking post-conviction relief, the post-conviction court denied Driver's motions. He now appeals and raises six issues, which we consolidate and restate as follows:

I. Whether the post-conviction court erred when it determined that Driver was on parole on October 31, 2014, when the parole violation was filed;

II. Whether the post-conviction court erred when it determined that requiring Driver to wear a GPS electronic monitoring system as a condition of parole did not violate ex post facto laws; and

III. Whether the post-conviction court addressed in its order Driver's pending motion concerning credit time.

We affirm in part and remand in part.

## Facts and Procedural History

Following a guilty plea, the trial court sentenced Driver on December 14, 2001, to twenty years for Class A felony criminal deviate conduct and six years for Class B felony robbery under Cause Number 71D03-0104-CF-146 ("Cause 146"). *Appellant's App. Vol. 2* at 13. The sentences were to be served concurrently, and Driver received 244 days of jail time credit. On April 13,

2007, the six-year robbery sentence expired, but Driver was still serving his twenty-year sentence for his criminal deviate conduct conviction.[1]

[4] While still incarcerated on the criminal deviate conduct sentence, Driver pleaded guilty in Sullivan County to Class C felony prisoner in possession of a dangerous device or material under Cause Number 77D01-0606-FC-37 ("Cause 37" or "the Sullivan County conviction"). Driver was sentenced on June 27, 2007 to four years, with two years suspended, to be served consecutive to Cause 146.

[5] After consideration of various losses of credit time and demotion in credit class for disciplinary violations, Driver became eligible for parole on the twenty-year sentence beginning on August 10, 2013. He was not physically released from the Indiana Department of Correction ("DOC"), however, because, on August 11, 2013, Driver began serving the consecutive sentence for his Sullivan County conviction.

[6] Driver believed that, as of August 11, 2013, he (1) was "turned over" to serve the Sullivan County conviction and was thereby effectively discharged from the criminal deviate conduct conviction and the associated parole, and (2) was statutorily entitled to a Certificate of Discharge from DOC. Therefore, he contacted various people including the Release Coordinator at the Westville

---

[1] According to DOC documents, Driver's maximum release date on the criminal deviate conduct conviction is April 14, 2021. *Appellant's App. Vol. 3* at 59, 68-69.

Correctional Facility and the Indian Parole Commission, through Parole Agent Joshua Brooks ("Agent Brooks") at the St. Joseph County Parole Office Division #8, and the Clerk of the St. Joseph County Superior Court.

[7] Driver was released from DOC incarceration on October 30, 2014, but his request for a certificate of discharge was not resolved prior to that time. Driver was transported by DOC to the St. Joseph County Parole Division #8 in South Bend, Indiana, with regard to his parole on his criminal deviate conduct conviction, which, the State asserts, had begun on August 10, 2013.[2] At the parole department, Driver was presented with, among other things, a Parole Stipulations for Sex Offender, SOMM Waiver Agreement, Conditional Parole Release Agreement, and GPS Offender Agreement, but he refused to sign the documents on the basis that his parole was discharged on August 11, 2013. One of the parole conditions was that Driver not be within 1,000 feet of a school or park. Driver was placed on GPS electronic monitoring, even though he objected to it on the basis that it was illegal, unconstitutional, and violated ex post facto laws. *Appellant's App. Vol. 3* at 101.

[8] One day after release from DOC, Agent Brooks contacted Driver and ordered him back to Parole Division #8, where Driver was served a notice of parole

---

[2] Although there had been some dispute or disagreement regarding the length of parole, the record before us indicates that the parties agree that Driver was subject to parole for a period of twenty-four months. *Tr.* at 15-16 (Driver stating that parole agents told him two years, and State's attorney agreeing he was obligated to a period of two years of parole); *Appellant's App. Vol. 2* at 106 (Declaration of Farmer stating that Driver was obligated to two years of parole).

violations, alleging that (1) he violated the 1,000-foot restriction rule because on the evening of October 30 and through the morning of October 31, Driver was for a number of hours at a home located 180 feet from a park and that he also went directly into another park, and (2) he failed to follow the parole agents' instructions by refusing to sign the parole forms, and when the forms were read to Driver, he "at several points [] laughed at the rules." *Appellant's App. Vol. 2* at 140. Driver was taken into custody; at the time that the warrant was served, Driver had served 447 days on parole status, from August 10, 2013 to October 31, 2014. Driver attended the December 2, 2014 Parole Board hearing via video conference, and the Parole Board found him guilty of the alleged violations and revoked his parole. *Id.* at 150.

[9] On December 23, 2014, Driver filed a Motion to Modify Sentence regarding "jail earned credit." *See id.* at 5 (CCS entry reflecting filing of motion). On January 20, 2015, Driver filed a Motion for Certificate of Discharge ("Motion for Discharge"), alleging that he completed his sentence for criminal deviate conduct on August 10, 2013, and at that time he was "turned over" to serve the sentence on the Sullivan County conviction, which "'effectively' discharge[ed]" the criminal deviate conduct cause, and that therefore he was not on parole on October 31, 2014, when he was alleged to have violated parole. *Appellant's App. Vol. 3* at 94. Along with his Motion for Discharge, Driver filed an Order to Show Cause and Temporary Restraining Order, an Affidavit in Support of

Motion to Show Cause and Temporary Restraining Order, and a Memorandum in Support of Restraining Order.[3]

[10] On February 6, 2015, in response to Driver's inquiries and request for an interview regarding his parole in Cause 146, DOC Release Specialist Jennifer Lee Farmer ("Farmer") sent a memorandum or letter to Driver, which explained:

> Your sentences ([Cause 146] & [Cause 37]) were ordered to run consecutive to one another. This means that you did complete [Cause 146] on 08-10-2013; however, *your time then turned over* and you started serving your time on [Cause 37]. *You were actually serving Parole time*; however, you do not get 2 for 1 for time served on Parole while serving a consecutive sentence. You only get CC3 time. At the time of Parole on [Cause 146], you had 2803 days that you were still responsible for. These are the days that you did NOT serve physically.

*Id.* at 40 (emphasis added).[4]

[11] The post-conviction court held a hearing on December 15, 2015 on "a variety of filings by Mr. Driver," including his Motion for Discharge and related pleadings, and an earlier-filed motion "claiming he did not get his . . . credit

---

[3] We note that the CCS indicates that the State, not Driver, filed a motion for order to show cause and temporary restraining order. *Appellant's App. Vol. 2* at 5. It is not clear if this was meant to reflect Driver's filing or if the State filed its own motion for order to show cause and temporary restraining order.

[4] We note that Farmer's memorandum contained a scrivener's error, by stating Cause number "71D03 0104 CR 00146" in two places where she intended to state Cause No. "71D01 0606 FC 00037." She corrected that error by a Declaration, which the State submitted as evidence, over Driver's objection, at the December 2015 hearing. *See Appellant's App. Vol. 2* at 105 (Declaration of Jennifer Farmer, submitted as Exhibit A to State's Supplemental Response to Motion for Discharge).

time when he was in jail[.]"[5]  *Tr.* at 3.  The court received argument from Driver regarding the jail time credit and took the matter under advisement. Next, the court addressed the Motion for Discharge, and Driver testified in support of his arguments that he "was never properly placed on parole," because (1) he was told that he was "turned over" to serve the consecutive sentence for his Sullivan County conviction and was thereby "effectively discharged, and (2) he did not receive statutory advisements and conditions of parole until after he was released from incarceration in October 2014.  *Id.* at 23, 29.  Driver contended that, because he was not on parole, he, therefore, "did not violate any parole."  *Id.* at 26, 39.  In support of its position that the Parole Board did not turn over or discharge Driver, that he was on parole when he was released from DOC on October 30, 2014, and that he violated parole, the State elected to rest on the arguments, authority, and exhibits previously provided in its Response and Supplemental Response to Driver's motions.  During the

---

[5] We note that, on December 14, 2015, one day prior to the hearing, the State filed a Supplemental Response to Driver's Motion for Discharge.  At the hearing, Driver objected to the filing of the Supplemental Response, which among other things included as an exhibit the Declaration of Jennifer Farmer.  Although the State had served Driver by mail as required, it also presented him at the hearing with a copy of the filing and attachments, and the post-conviction court recessed to allow Driver time to review the contents.  Driver filed a written objection to the Supplemental Response on February 22, 2016, asking the court to strike it, and the State thereafter filed a response in opposition to Driver's objection.  The post-conviction court referred to and relied upon the State's Supplemental Response in its Findings of Fact and Conclusions of Law and Order.  Driver asserts on appeal that it was error for the post-conviction court to allow the Supplemental Response.  The Post-Conviction Rules state, with respect to pleadings, that the court may make appropriate orders for an amendment either to the petition or the answer, for filing further pleadings or motions, or for extending the amount of time allowed for any pleading. Ind. Post-Conviction Rule 4.  Moreover, Post-Conviction Rule 5 allows the court to accept, up through the date of the hearing itself, any affidavits, depositions, testimony, or other evidence.  Driver has failed to establish error with regard to the post-conviction court's rejection of his request to strike the Supplemental Response.

course of the hearing, the trial court advised the parties that it considered Driver's Motion for Discharge and related motions, collectively, as seeking post-conviction relief, and neither party objected to this treatment of the motions. *Id.* at 37-39.

[12] Subsequently, the parties each submitted proposed findings of fact and conclusions of law, and, on February 29, 2016, the post-conviction court issued its Findings of Fact, Conclusions of Law, and Order ("Order"). The Order reflected that the court construed Driver's various requests for relief as a petition for post-conviction relief, and applying the post-conviction standards, the court denied relief to Driver. Its conclusions of law included:

> 3. Driver's claim that the Parole Board used the term "turn over" when he began serving his Sullivan County sentence on August 11, 2013 is unsupported by the evidence. Driver's situation is not the same as that in [] *Meeker v. Ind. Parole Bd.,* 794 N.E.2d 1105 (Ind. Ct. App. 2003). Accordingly, Driver's twenty-year sentence for Criminal Deviate Conduct imposed by the St. Joseph Superior Court was not discharged. Thus, at the time of his parole violation, Driver was still properly on parole under the sentence this Court imposed on December 14, 2001. That sentence was not set to expire until April of 2021. *See* Ind. Code § 35-50-6-1 (2000).

> 4. Since Driver's parole was revoked on or about October 31, 2014, the applicable parole statute requires that he serve the remainder of his fixed term, less credit time earned. Ind. Code § 35-50-6-l(c) (2000). This results in a projected release date of January 20, 2018.

5. Only if Driver is incarcerated until January 20, 2018, or the Parole Board grants reinstatement, can Driver be released to parole. Neither of those circumstances has occurred.

6. The Court thus determines that Driver is properly detained by the Indiana Department of Correction [("DOC")].

7. Likewise, Driver's claim that the parole requirement of a GPS monitoring system was a violation of the ex post facto clause of the Indiana Constitution is without merit. The statute in force at the time of Driver's offense provided the Parole Board with the authority to set the terms of an offender's parole so long as the condition is reasonably related to the parolee's successful re-integration into the community and is not unduly restrictive of a fundamental right. Ind. Code § 11-13-3-4 (1998). Here, the use of a GPS monitoring system is reasonably related to Driver's re-integration into society and is not unduly restrictive of a fundamental right. As such, it does not violate the ex post facto provision of the Indiana Constitution. Indeed, it is a measure to protect society.

8. The claim that Driver did not violate the terms of his parole is not viable. As a condition of his parole, Driver was required to not be within 1000 feet of a park. Yet, the GPS monitoring system showed that Driver was within 1000 feet of Veteran's Memorial Park, a clear violation of his parole. The Parole Board confirmed this violation. (State's December 14, 2015 Supplemental Response, Exhibits H & I).

Driver now appeals.

# Discussion and Decision

[13] Indiana Post-Conviction Rule 1(1)(a)(5) provides, "A person who has been convicted of, or sentenced for, a crime by a court of this state, and who claims . . . that his sentence has expired, his probation, parole or conditional release unlawfully revoked, or he is otherwise unlawfully held in custody or other restraint . . . may institute at any time a proceeding under this Rule to secure relief."[6] The petitioner bears the burden of establishing his grounds for post-conviction relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5); *Hampton v. State*, 961 N.E.2d 480, 491 (Ind. 2012). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Fisher v. State,* 810 N.E.2d 674, 679 (Ind. 2004). On review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. *Id.* Further, the post-conviction court in this case entered findings of fact and conclusions thereon in accordance with Indiana Post-Conviction Rule 1(6). "A post-conviction court's findings and

---

[6] In *Mills v. State*, 840 N.E.2d 354, 357 (Ind. Ct. App. 2007), the trial court treated the defendant's petition for writ of habeas corpus relief as a petition for post-conviction relief. On appeal, this court observed, "Because Mills alleged that he was entitled to immediate release, it appears that the habeas corpus statutes are applicable. However, because Mills alleges that his parole was unlawfully revoked, it appears that he could have also filed for relief under the post-conviction rules." *Id.* Observing that neither party claimed on appeal that it was error to treat the writ of habeas corpus as a petition for post-conviction relief, the *Mills* court proceeded to address the merits of the defendant's claim. Likewise, neither party in the present case alleges it was error to treat Driver's Motion for Discharge and related pleadings as seeking post-conviction relief, and we review the appealed decision accordingly. We further note that although Driver is proceeding *pro se,* such litigants are held to the same standard as trained counsel and are required to follow procedural rules. *Evans v. State,* 809 N.E.2d 338, 344 (Ind. Ct. App. 2004), *trans. denied.*

judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Id.* We accept findings of fact unless clearly erroneous, but we accord no deference to conclusions of law. *Id.* The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Id.*

# I. Status of Parole in August 2013

The post-conviction court found that Driver became eligible for, and was placed on, parole on August 10, 2013, although he remained incarcerated at that time because on August 11, 2013, he began serving the consecutive sentence for his Sullivan County conviction. Driver asserts that he was not placed on parole on August 10, 2013 and, rather, was discharged from parole at that time. Thus, he claims, he was not on parole as of October 31, 2014, when he was alleged to have violated parole, and because he was not on parole, he could not have violated parole. He raises, principally, two arguments, and we address each in turn.

## A. "Turned Over"

Driver claims that he completed his sentences on robbery and criminal deviate conduct convictions on August 10, 2013, and was at that time "turned over" to serve the consecutive sentence for his Sullivan County conviction, which, he claims, effectively discharged him from parole. For the proposition that he was "turned over," Driver relies on the February 2015 memorandum from Farmer, a DOC Release Specialist. The memorandum stated in part:

> Your sentences ([Cause 146] & [Cause 37]) were ordered to run consecutive to one another. This means that you did complete [Cause 146] on 08-10-2013; however, *your time then turned over* and you started serving your time on [Cause 37].

*Appellant's App. Vol. 3* at 40. Driver's position is that when a defendant is "turned over," he is thereby discharged from parole, and because he was discharged from parole, he could not be guilty of any subsequent alleged violations in October 2014.

[16] In support, Driver refers us to *Meeker v. Indiana Parole Board*, 794 N.E.2d 1005 (Ind. Ct. App. 2004), *trans denied*, where the defendant was ordered to serve two concurrent sentences for drug dealing in 1991. 794 N.E.2d at 1106. In 1995, Meeker was released on parole. Approximately one year later, Meeker's parole was revoked after he was convicted of several alcohol-related offenses, and he was ordered to serve the balance of the two sentences for drug dealing. In 1998, the Parole Board decided Meeker should be "turned over to another commitment" to serve the sentences on the alcohol-related offenses. *Id.* at 1107. In 2000, Meeker was released on parole again. The 1991 convictions were used as the basis of the parole. In 2001, the Parole Board again revoked Meeker's parole and reinstated the remaining sentences on the 1991 dealing convictions.

[17] Meeker appealed, and this court determined that the Parole Board's "turn over" amounted to a discharge from his dealing sentence and that Meeker could not

again be required to serve the remainder of that sentence at a later time. *Id.* at 1108-09. Specifically, the *Meeker* court observed,

> When the parole board "turned over" Meeker to begin serving the alcohol related sentences, it effectively discharged him from the remainder of the dealing convictions. There is no statutory authority or case law definition of "turn over" and we conclude that we must construe the phrase against the State. During the 1998 review, the parole board could have refused to "turn over" Meeker's sentence, as it had done in 1997, until he served the remainder of his fixed term. The parole board did not do so, and the State provides no support for its contention that Meeker could again be required to serve the remainder of his dealing sentence at some later date.

*Id.* at 1109.

[18]     A number of subsequent cases, however, "have distinguished *Meeker* and have significantly limited its reach." *Baldi v. State*, 908 N.E.2d 639, 642 (Ind. Ct. App. 2009). For instance, in *State v. Metcalf*, 852 N.E.2d 585, 588-89 (Ind. Ct. App. 2006), *trans. denied*, this court considered *Meeker* and clarified that the language "turned over" does not always mean "discharged." *Id.* at 589 ("In our view, the rule set forth in *Meeker* does not mean that a 'turn over' will always effect a discharge.").[7] The relevant inquiry is whether the Parole Board took action to discharge or "turn over" a sentence.

---

[7] In *Metcalf*, the Parole Board's voting sheet reflected that Metcalf was granted a "turnover," but also included the phrases "preserve life sentence" and "will go back on life sentence" on the forms in the "comments" section. 852 N.E.2d 585, 586 (Ind. Ct. App. 2006), *trans. denied*. The Metcalf court concluded that the Parole Board used language to describe its intent when it "turned over" Metcalf's sentence, and that

[19]    Driver's case is much more similar to the situation presented in *Hannis v. Deuth*, 816 N.E.2d 872 (Ind. Ct. App. 2004), in which the defendant was sentenced in 1996 to eight years on one conviction and to two years each on several other convictions. The trial court ordered the two-year sentences to run concurrent with one another but consecutive to the eight-year sentence. *Id.* at 873-874. In November 1999, DOC noted in a "Commitment Change" document that Hannis "was turn[ed] over to new commitment," and he began serving the two-year sentences. *Id.* at 874. In August 2000, Hannis was released to parole with a maximum expiration of sentence date of November 22, 2001. *Id.* In March 2001, a parole violation warrant was issued because he had been arrested for possession of marijuana. On May 17, 2001, the parole board revoked his probation and reinstated the remainder of the eight-year sentence. *Id.*

[20]    On appeal, Hannis argued that his eight-year sentence was discharged in November 1999, when DOC "turn[ed] him over," but the *Hannis* court distinguished *Meeker* on the ground that, while Meeker was effectively discharged when the Parole Board "turned over" Meeker from the dealing convictions to the new convictions, in Hannis's case, the only evidence of a "turn over" was a document prepared by DOC. *Id*. at 879. That is, there was no evidence that the *Parole Board* discharged his sentence as required by Indiana

---

language indicated the Board's intent not to discharge Metcalf from the originally-imposed life sentence. *Id.* at 590.

Code section 35-50-6-1(b).[8]  The *Hannis* court affirmed the trial court's denial of relief.  *Id*. at 880.  Like *Hannis*, there is no evidence here that the Parole Board discharged, or even "turned over," Driver's sentence.  *See also Parker v. State,* 822 N.E.2d 285, 287-88 (Ind. Ct. App. 2005) (petitioner presented no evidence that Parole Board discharged or "turned over" the sentence).

[21]  Driver's situation is also similar to that in *Mills v. State*, 840 N.E.2d 354, 359 (Ind. Ct. App. 2006), where the defendant, like Driver, claimed his parole was unlawfully revoked because he was not on parole at the time he committed a parole violation.  Mills was granted parole on an eight-year burglary sentence and immediately began serving a one-year consecutive sentence for failure to appear.  Shortly after Mills was released from incarceration for the failure to appear sentence, he was arrested for battery on a health care worker.  Based on the commission of the battery and other subsequent parole violations, the Parole Board revoked Mills's parole.  *Id*. at 354-55.

[22]  As does Driver, Mills argued under *Meeker* that his burglary conviction was discharged when he was "turned over" to serve his consecutive sentence for failure to appear.  *Id*. at 358.  The *Mills* court found that "[u]nlike Meeker, Mills presented no evidence that the [Parole] Board took action to discharge or 'turn over' his burglary sentence" and that Mills "served part of his parole on the burglary conviction while he served the consecutive sentence for the failure to

---

[8] The *Hannis* court also distinguished *Meeker* on the ground that *Meeker* dealt with two unrelated convictions, not a single judgment.  816 N.E.2d 872, 879 (Ind. Ct. App. 2004).

appear conviction." *Id*. at 358, 360. The same is true here. Driver's parole for the criminal deviate conduct conviction was not suspended, held in abeyance, or "turned over." Instead, he served part of his parole on the criminal deviate conduct conviction while he served the consecutive sentence out of Sullivan County.

[23] As in *Hannis* and *Mills*, there is no evidence that the Parole Board intended to and did discharge Driver in 2013. To the extent that Farmer's 2015 response used the words "turned over," she was a DOC Release Specialist, and her statement is not the equivalent of a decision by the Parole Board to discharge Driver. *See Hannis*, 816 N.E.2d at 879. Moreover, her February 2015 memorandum expressly told Driver that, when he began serving the consecutive Sullivan County sentence in August 2013, "you were actually on parole[.]" *Appellant's App. Vol. 3* at 40. Additionally, other evidence presented at the December 2015 hearing on Driver's motions showed that, when Driver was released from incarceration in October 2014, he was advised that he was subject to "Dual Supervision," for probation and parole. *Appellant's App. Vol. 2* at 125.

[24] Driver has failed to show that the post-conviction court erred when it rejected his claim that he was effectively discharged from parole on August 10, 2013 and determined that he was still on parole on October 30, 2014, when he was discharged from DOC and alleged to have violated parole.

## B. Notice of Parole

[25] Driver next urges that on August 10, 2013 he did not receive statutorily-required advisements and conditions of parole, and therefore, he was not actually placed on parole, and because he was not on parole, he did not violate it. Driver is correct that certain advisements, notices, and services are required under Indiana statutes. For instance, Indiana Code section 11-13-3-3 requires that a victim or a witness be notified when a defendant is going to be released on parole, and Indiana Code section 11-13-3-4(c) provides, in part, that "if a person is released on parole, the parolee shall be given a written statement of the conditions of parole" and requires that signed copies of the statement are to be retained by the parolee and given to the person charged with the parolee's supervision. Another statute, Indiana Code section 11-13-3-6(a), directs that "the department shall supervise and assist persons on parole[,]" including assisting persons in preparing release plans, providing employment counseling and assistance with job and residential placement, providing financial counseling, as well as vocational and educational counseling and placement.

[26] On appeal, Driver argues, "Under the rel[e]v[a]nt portions of the Indiana Code[,] the Department of Correction and the Indiana Parole Board had a duty to notify Driver of his parole status[,] advise Driver of any agreement of parole or parole stipulations or modifications[,] provide Driver with pre-parole counseling (through the [DOC]'s "'RE-entry" program)[,] have a parole plan constructed by the Department[,] including housing[,] residential placement and employment assistance." *Appellant's Br.* at 23. Driver does not dispute that

he received the required advisements in October 2014; rather, the crux of his claim is that he should have received them in August 2013.

[27] Driver provides no authority, however, for his position that any statements, notices, advisements, and services were required in August 2013, when he was placed on parole but not physically *released* from DOC custody, and, rather, remained incarcerated until October 2014. Indeed, as Driver acknowledges, "[T]he parole statutes makes no specific provision for dealing with consecutive sentences." *Hannis*, 816 N.E.2d at 877. However, even if, as Driver claims, the statutory advisements should have been provided to Driver in August 2013, he provides no authority for the proposition that any such failure to provide the information in August 2013 automatically discharged him from his parole obligations. Furthermore, we have recognized that "[w]here the purpose and intent of a statutory mandate are satisfied, this court will not reverse for mere technical procedural errors unless the defendant can show that he was harmed or prejudiced by such errors." *Komyatti v. State*, 931 N.E.2d 411, 416 (Ind. Ct. App. 2010) (quoting *Kindred v. State,* 173 Ind. App. 624, 629, 365 N.E.2d 776, 779 (1977)) (rejecting parolee's claim that due process was violated where Parole Board did not provide him, after preliminary hearing, with written findings and statement of evidence relied upon in finding probable cause that he violated parole, because he showed no prejudice). Here, Driver has shown no prejudice from not receiving the advisements or conditions until his physical release from DOC custody on October 30, 2014. Accordingly, we find that Driver has not shown that the evidence leads unerringly and unmistakably to a

decision opposite that reached by the post-conviction court, and we conclude that the post-conviction court's findings of fact and conclusions thereon denying Driver's Motion for Discharge and related pleadings are not clearly erroneous.

## II. GPS Monitoring

[28] Driver claims that requiring him to wear GPS electronic monitoring as a condition of parole violated the federal and state prohibition against ex post facto laws. *See* U.S. Const., Art. I, § 10; Ind. Const. Art. I, § 24. Among other things, "[t]he ex post facto prohibition forbids the Congress and the States to enact any law 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.'" *Hevner v. State*, 919 N.E.2d 109, 111 (Ind. 2010) (quoting *Weaver v. Graham*, 450 U.S. 24, 28 (1981)). Driver argues that at the time he was charged and sentenced in 2001, GPS monitoring did not exist and was not available, and therefore, his violation of parole, which was based on his location as determined by GPS, was illegal. The post-conviction court determined that his argument was without merit, and so do we.

[29] Indiana Code section 11-13-3-4 outlines various permitted conditions of parole, including requiring a parolee who is a sex or violent offender to wear a monitoring device. Ind. Code § 11-13-3-4(j). The section further provides that the Parole Board may adopt additional conditions as long as the conditions are reasonably related to the parolee's successful integration into the community and is not unduly restrictive of a fundamental right. Ind. Code § 11-13-3-4(b);

*Weiss v. Ind. Parole Bd.*, 838 N.E.2d 1048, 1051 (Ind. Ct. App. 2005), *trans. denied*. The additional condition may include sex offender conditions, even if the parolee has not been convicted of a sex offender crime. *Weiss*, 838 N.E.2d at 1052.

[30]     Here, Driver was convicted of, and on parole for, criminal deviate conduct, a sex offense, and thus qualified for sex offender treatment by the Parole Board. We find unpersuasive Driver's arguments that GPS monitoring "had the effect of adding punishment beyond that which could have been imposed when the crime was committed" because the monitoring "make[s] every day commutes extremely difficult," requires him "to spend significant time maintaining battery charge, function and overall maintenance of the GPS device" and subjects him to "the stigma of wearing the device in public." *Appellant's Br*. at 31, 33. Rather, GPS monitoring does not affect a fundamental right, is reasonably related to his successful reintegration into society, and is a reasonable condition to prevent commission of sex offenses, as it allows parole officers to track a defendant's whereabouts to ensure that he or she is not within 1,000 feet of a park or other location that is off limits to sex offenders. Accordingly, there was no constitutional violation for requiring Driver to be subject to GPS monitoring as a condition of parole or for revoking his parole based on the information received from it.[9]

---

[9] As a separate, but we find related, issue, Driver asserts that the post-conviction court erred when it determined that "Driver did violate the terms of his parole and is properly detained." *Appellant's Br*. at 34.

# III. Credit Time

[31] The post- conviction court began the December 15, 2015 hearing by recognizing that the parties were present for a hearing "on a variety of filings made by Mr. Driver[,]" which the court summarized into two categories: (1) the Motion for Discharge and related filings, filed January 20, 2015, and (2) Verified Motion for Jail Credit and Good Time Allowance ("Motion for Jail Credit"), filed December 23, 2014.[10] *Tr.* at 3.

[32] The post-conviction court began the hearing by addressing the Motion for Jail Credit, noting that the trial court judge who sentenced Driver in 2001[11] had recognized 244 days of pre-sentence jail time credit and that, consistent with that, a recently-received calculation from the St. Joseph probation department

His position is based, in part, on the GPS monitoring not being a proper condition of parole, which claim we have already rejected in this decision. He also challenges the GPS evidence presented at the December 2014 parole hearing, specifically the house number and location of the home where monitoring indicated that he was located, asserting that the State "presented no evidence of Driver's alleged parole violation other than an unsubstantiated statement from parole agents." *Id*. at 38. We consider only the evidence most favorable to the revocation and will not reweigh the evidence or judge witness credibility on appeal. *Komyatti v. State*, 931 N.E.2d 411, 419 (Ind. Ct. App. 2010). He also argues that if failure to follow parole agents' instructions, including failure to sign the parole agreement was a basis for revocation, "then he should never have been allowed [to] leave parole district #8 but instead should have been transported to the St. Joseph County jail" and issued a violation at that time, but instead, he was released on parole so that "the 1,000-ft rule" violation "could be manufactured by the Parole Board and its agents[.]" *Id*. at 34-36. His claim that the 1,000-foot rule violation was "manufactured" is simply a request for us to reweigh the evidence, which, again, we do not do on appeal. *Id*.

[10] The CCS entry reflects a somewhat different title of the December 23, 2014 filing: "Motion to Modify Sentence" "FOR JAIL EARNED CREDIT." *Appellant's App. Vol. 2* at 5.

[11] We note that, prior to the December 2015 hearing, the Honorable Steven Hostetler was appointed as Special Judge in this case on November 19, 2015.

reflected that Driver "did in fact receive the 244 days for which he was entitled to credit." *Id*. at 4. Driver's argument to the post-conviction court was that he was entitled to 488 days "because I was earning credit time." *Id*. The State did not present any argument or evidence on the issue, and the post-conviction court stated, "The Court will take the matter under advisement, and will issue a ruling on that issue." *Id*. at 5. Later, at the conclusion of the hearing, while the court discussed having the parties tender specific findings of fact to the court, it noted, "I don't think we need those with respect to the December 23 verified motion for jail credit and goodtime allowance. . . . I can rule on that, because I don't need findings [o]n that." *Id*. at 55-56.

[33] On appeal, Driver claims that the post-conviction court's Order failed to rule on the Motion for Jail Credit. Initially, we observe that Driver did not include the Motion for Jail Credit in his Appendix, and it is not otherwise included in the record before us, as required by Indiana Appellate Rule 50(A).[12] The State asserts, correctly, that Driver has thus waived his claim for review. *See In re Garrard*, 985 N.E.2d 1097, 1104-05 (Ind. Ct. App. 2013) (noncompliance with Appellate Rules results in waiver), *trans. denied*.

---

[12] Pursuant to Appellate Rule 50(A), the Appellants' Appendix must contain "those parts of the Record on Appeal that are necessary for the Court to decide the issues presented," including "pleadings and other documents from the Clerk's Record . . . that are necessary for resolution of the issues on appeal."

[34] Nevertheless, despite Driver's failure to include the Motion for Jail Time, we find that the Transcript provides the general crux of the issue, and thus we proceed to address the merits of Driver's claim, which is that the post-conviction court did not address his motion alleging entitlement to additional jail time credit. Upon review of the record, we agree with Driver that the Order did not address it. That is, the introductory paragraphs of the post-conviction court's Order, which provide the procedural backdrop for the forthcoming Findings of Fact and Conclusions of Law, state that on December 15, 2015 the parties came for hearing "on the Motion for Certificate of Discharge, the Motion for Hearing and the Motion for Order to Show Cause and TRO, all filed by [Driver] on January 20, 2015[.]" *Appellant's App. Vol. 2* at 16. The approximately eight-page Order makes no mention of the pending Motion for Jail Credit.

[35] The State urges that, contrary to Driver's argument, the Order adequately addressed the Motion for Jail Credit because the Order included the following statement: "Driver received 244 days of jail time credit." *Id*. However, we do not find that this undisputed statement – that Driver received 244 days of jail time credit – is the equivalent of a ruling on the issue of whether Driver was or was not entitled to 488 days, as he claimed. The State also argues that Driver did not satisfy his post-conviction burden of proof regarding the credit time; by our decision today we do not express any opinion on whether Driver did or did

not prove his claim.[13]  Rather, we remand with instruction for the post-conviction court to issue a separate ruling on the Motion for Jail Credit, or, alternatively, to clarify that it intended for its Order to constitute a ruling on Driver's pending credit time claim.

[36]  Affirmed in part and remanded in part.

[37]  Najam, J., and Brown, J., concur.

---

[13] Driver's assertion appears to be that he was entitled to credit time for the period of time when he was on parole, but still incarcerated and serving the consecutive Sullivan County sentence.  We observe that Farmer's Declaration states that "[w]hile an offender is on parole, he does not receive earned credit time for time served on parole, even if he is still incarcerated due to serving incarcerated time for a different sentence," and that Driver did not earn "2 for 1 credit" while he was serving parole beginning on August 10, 2013 and was at the same time incarcerated on the Sullivan County conviction. *Appellant's App. Vol. 2* at 106.